UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

PALOMA AZUCENA SANTIAGO FONSECA,

       Petitioner,

v.

       Case No. 3:26-cv-309-MMH-MCR

GARRETT RIPA, et al.,

       Respondents.

## **ORDER**

### **I. Status**

Petitioner Paloma Azucena Santiago Fonseca, an immigration detainee, initiated this action by filing, through counsel, a Petition for Writ of Habeas Corpus (Doc. 1) on February 13, 2026. On March 2, 2026, Fonseca filed a Notice of Supplemental Authority (Doc. 6). The Federal Respondents (Garrett Ripa, Markwayne Mullin, and Todd Blanche[1]) filed a Response to Petition for Writ of Habeas Corpus (Doc. 10; Response). Respondent Warden filed a Motion to Dismiss (Doc. 11; Motion to Dismiss), arguing he is not a proper respondent in this case. Fonseca filed a counseled Reply (Doc. 16). This case is ripe for review.

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Markwayne Mullin and Todd Blanche are automatically substituted for Kristi Noem and Pamela Bondi, respectively.

## II. Background

According to Fonseca, she is a citizen of Mexico who entered the United States without inspection over twenty-seven years ago. Petition at 3; see Doc. 10-1 at 1. On December 9, 2025, United States Immigration and Customs Enforcement (ICE) took custody of Fonseca following her arrest by local law enforcement. Doc. 10-2 at 2.

## III. Analysis

In her Petition, Fonseca argues that her mandatory detention under 8 U.S.C. § 1225(b)(2) violates the Immigration and Nationality Act (INA) and she is entitled to relief as a member of the "Bond Eligible Class" in Maldonado Bautista v. Santacruz, No. 5:25-cv-1873-SSS-BFM (C.D. Cal.). Petition at 8.[2] As relief, she seeks, inter alia, immediate release. Id. at 9.

The Court first addresses the Federal Respondents' arguments that two statutory provisions—8 U.S.C. § 1252(g) and § 1252(b)(9)—deprive this Court

---

[2] While the Petition seemingly focuses on Fonseca's argument relating to being a member of the Bond Eligible Class in Maldonado Bautista, the underlying premise of the argument is that she is improperly detained under § 1225 instead of being detained under § 1226 and afforded a bond hearing. See Petition at 8. Indeed, she explicitly argues that Respondents are "violat[ing] [her] statutory rights under the INA." Id. The Response clearly addresses the statutory interpretation question. See Response at 4-8. Because the Court finds that Fonseca is entitled to relief on her assertion that Respondents are violating the INA by classifying her under § 1225, the Court need not address her contentions with respect to the Madonado Bautista class action. See Banks v. Dretke, 540 U.S. 668, 689 n.10 (2004) (declining to address an additional claim in a habeas petition after granting relief on another claim because "any relief [petitioner] could obtain on that claim would be cumulative").

of jurisdiction to adjudicate Fonseca's claim and that Fonseca failed to exhaust her administrative remedies prior to filing this case. See Response at 8. Because the Court rejects those arguments, the Court then addresses the merits of Fonseca's claim, the Motion to Dismiss, and the appropriate remedy.

### a. 8 U.S.C. § 1252(g)

Section 1252(g) states in pertinent part that "no court shall have jurisdiction to hear any cause or claim by . . . any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). "It is a 'discretion-protecting provision' designed to prevent the 'deconstruction, fragmentation, and hence prolongation of removal proceedings.'" Camarena v. Dir., Immigr. & Customs Enf't, 988 F.3d 1268, 1272 (11th Cir. 2021) (quoting Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 487 (1999)). Nevertheless, the provision "does not cover 'the universe of deportation claims.'" Id. (quoting Reno, 525 U.S. at 482). Indeed, the Supreme Court has explained that section 1252(g) should be narrowly read to encompass only the "three discrete actions that the Attorney General may take: her decision or action to commence proceedings, adjudicate cases, or execute removal orders." Reno, 525 U.S. at 482 (internal quotation marks and citation omitted). While "'many other decisions or actions' may be 'part of the

3

deportation process,' only claims that arise from one of the covered actions are excluded from [court] review" by this section. Camarena, 988 F.3d at 1272.

Here, Fonseca is not attacking ICE's decision to commence removal proceedings, adjudicate her case, or execute an order of removal. Instead, Fonseca is attacking ICE's decision to treat her as an "applicant for admission" under § 1225(b), which imposes mandatory detention, rather than as a noncitizen under § 1226(a), which permits a bond hearing before an immigration judge. Thus, the Court finds that § 1252(g) does not bar Fonseca's claim.

### b. 8 U.S.C. § 1252(b)(9)—the "Zipper Clause"

Under the "Zipper Clause," "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order." 8 U.S.C. § 1252(b)(9). But "§ 1252(b)(9) 'does not present a jurisdictional bar' where those bringing suit 'are not asking for review of an order of removal,' 'the decision . . . to seek removal,' or 'the process by which . . . removability will be determined.'" Dep't of Homeland Sec. v. Regents of the Univ. of Cal., 591 U.S. 1, 19 (2020) (quoting Jennings v. Rodriguez, 583 U.S. 281, 294–95 (2018)). The Eleventh Circuit has "clarified that the zipper clause only affects cases that 'involve[ ] review of an order of

removal.'" Canal A Media Holding, LLC v. U.S. Citizenship & Immigr. Servs., 964 F.3d 1250, 1257 (11th Cir. 2020) (quoting Madu v. U.S. Att'y Gen., 470 F.3d 1362, 1367 (11th Cir. 2006)).

Here, Fonseca does not appear to have a final order of removal. Nor is she seeking to challenge the decision to seek removal or the process by which removability will be determined. Instead, as found above, she is challenging her classification under § 1225(b), which requires mandatory detention. Thus, § 1252(b)(9) does not bar this Court's review of her claim.

### c. Exhaustion

A petitioner need not exhaust administrative remedies if "the administrative body is shown to be biased or has otherwise predetermined the issue before it." McCarthy v. Madigan, 503 U.S. 140, 148 (1992). Recently, the Board of Immigration Appeals (BIA) found that immigration judges have no authority to consider bond requests from noncitizens who entered the United States without inspection "because aliens who are present in the United States without admission are applicants for admission as defined under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), and must be detained for the duration of their removal proceedings." In re Yajure Hurtado, 29 I. & N. Dec. 216, 220 (BIA 2025). Indeed, an immigration judge denied Fonseca's request for a custody redetermination, finding that he lacked jurisdiction. Doc. 10-4 at 3. Requiring Fonseca to appeal that decision to the BIA or make any further

5

administrative request for a bond hearing would be futile. District courts around the country, including some judges on this Court, have reached this same conclusion and declined to dismiss similar cases based on the alleged failure to exhaust. See, e.g., Patel v. Hardin, No. 2:25-cv-870-JES-NPM, 2025 WL 3442706, at *3 (M.D. Fla. Dec. 1, 2025)[3] (collecting cases); see also Mohammed v. Olson, No. 1:25-CV-02404-TWP-MKK, 2025 WL 3541819, at *2 (S.D. Ind. Dec. 10, 2025) (rejecting the respondents' argument that the petitioner must exhaust his administrative remedies by requesting a bond hearing; reasoning that "[b]ecause [the p]etitioner entered the country without inspection, if he were to move for a bond hearing, an [immigration judge] would have to decline jurisdiction over the issue" based on binding BIA precedent). Considering the circumstances, the Court rejects the Federal Respondents' exhaustion argument.

### d. Merits

The underlying premise of Fonseca's claim is that she should be classified under 8 U.S.C. § 1226(a) and afforded a bond hearing before an

---

[3] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

immigration judge instead of being mandatorily detained under 8 U.S.C. § 1225(b)(2). The Court examines each of these statutes in turn.

Section 1225 governs "applicants for admission," which the statute defines as "[a]n alien present in the United States who has not been admitted" or those "arriv[ing] in the United States." 8 U.S.C. § 1225(a)(1); see Jennings, 583 U.S. at 287 (noting that under § 1225, "an alien who arrives in the United States, or is present in this country but has not been admitted, is treated as an applicant for admission" (internal quotation marks and citation omitted)). The statute defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13). Immigration laws require applicants for admission to be inspected by immigration officers to determine whether they should be admitted into the country. Jennings, 583 U.S. at 287. Certain applicants are subject to expedited removal. See 8 U.S.C. § 1225(b)(1). But, as relevant here, § 1225(b)(2) "serves as a catchall provision," Jennings, 583 U.S. at 287, and provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained," 8 U.S.C. § 1225(b)(2)(A).

On the other hand, section 1226(a) states: "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision

7

on whether the alien is to be removed from the United States." 8 U.S.C. §

1226(a). The Attorney General "may continue to detain the arrested alien" or

"may release the alien on bond" or "conditional parole." 8 U.S.C. § 1226(a)(1)(2)

(emphasis added). The Supreme Court has recognized that this section "applies

to aliens already present in the United States." Jennings, 583 U.S. at 303.

"'For the past three decades,'" the government has recognized "this

dichotomy." Lopez v. Hardin, No. 2:25-CV-830-KCD-NPM, 2025 WL 3022245,

at *4 (M.D. Fla. Oct. 29, 2025) (quoting Pizarro Reyes v. Raycraft, No. 25-CV-

12546, 2025 WL 2609425, at *4 (E.D. Mich. Sept. 9, 2025) (appeal filed Oct. 24,

2025)). On July 8, 2025, however, the government changed course when the

Department of Homeland Security (DHS) issued the following guidance:

> An "applicant for admission" is an alien present in the United States who has not been admitted or who arrives in the United States, whether or not at a designated port of arrival. INA § 235(a)(1). **Effective immediately, it is the position of DHS that such aliens are subject to detention under INA § 235(b) and may not be released from ICE custody except by INA § 212(d)(5) parole.** These aliens are also ineligible for a custody redetermination hearing ("bond hearing") before an immigration judge and may not be released for the duration of their removal proceedings absent a parole by DHS. For custody purposes, these aliens are now treated in the same manner that "arriving aliens" have historically been treated.

ICE Memo: Interim Guidance Regarding Detention Authority for Applications

for Admission, AILA Doc. No. 25071607 (July 8, 2025). The BIA adopted and

applied this policy in Hurtado, 29 I. & N. Dec. 216. But district courts around the country have largely rejected the government's new interpretation of these regulations. See, e.g., Cetino v. Hardin, No. 2:25-CV-1037-JES-DNF, 2025 WL 3558138, at *3 (M.D. Fla. Dec. 12, 2025); Robles v. U.S. Dep't of Homeland Security, No. 1:25-CV-1578, 2025 WL 3558128, at *6 & n.3 (W.D. Mich. Dec. 12, 2025); Martinez-Martinez v. Noem, No. 25CV2975-GPC(VET), 2025 WL 3552746, at *6 (S.D. Cal. Dec. 11, 2025) ("Given the Government's longstanding interpretation of §§ 1225(b) and 1226(a), the [c]ourt is further persuaded that 'seeking admission' applies to arriving aliens and not aliens who have entered without inspection and lived in the United States for years."); Belsai D.S. v. Bondi, 810 F. Supp. 3d 1016, 1023 (D. Minn. 2025) ("Overwhelmingly, courts have rejected the interpretation offered by [the r]espondents that § 1225(b)(2) requires the detention of all noncitizens living in the country who are 'inadmissible' because they entered the United States without inspection."); Pizarro Reyes, 2025 WL 2609425, at *7 (collecting cases). But see Lopez v. Dir. of Enf't & Removal Operations, - - - F. Supp. 3d - - -, 2026 WL 261938, at *8 (M.D. Fla. Jan. 26, 2026) (disagreeing with the statutory interpretation that noncitizens seeking admission form "a distinct and narrower class than applicants for admission"); Mejia Olalde v. Noem, No. 1:25-CV-00168-JMD, 2025 WL 3131942, at *3 (E.D. Mo. Nov. 10, 2025) (finding that § 1225(a)(1) "explicitly includes more than just arriving aliens in the definition of

'applicant[s] for admission'"); Vargas Lopez v. Trump, 802 F. Supp. 3d 1132, 1142 (D. Neb. 2025) (finding that "just because [the petitioner] illegally remained in this country for years does not mean that he is suddenly not an 'applicant for admission' under § 1225(b)(2)").

Until recently, appellate courts had yet to weigh in on the issue. On February 6, 2026, the Fifth Circuit Court of Appeals issued a published, but not unanimous, opinion reaching the opposite conclusion. See Buenrostro-Mendez v. Bondi, 166 F.4th 494, 498 (5th Cir. 2026). The majority concluded that an alien without lawful admission who has been present in the United States for a period of time is subject to mandatory detention under § 1225(b)(2).[4] See id. That decision is not binding here. And while the Court respects the reasoned decision of the majority, the dissenting opinion is more persuasive. As such, the Court adopts the reasoning of the Buenrostro-Mendez dissent in full. See id. at 508–21 (Douglas, J., dissenting). For these reasons,

---

[4] In a published, non-unanimous opinion, the Eight Circuit Court of Appeals reached the same conclusion as the Fifth Circuit. See Avila v. Bondi, - - - F.4th - - -, 2026 WL 819258, at *6 (8th Cir. Mar. 25, 2026). Notably, a circuit split is likely on this issue. In ruling on a motion to stay pending appeal, the Seventh Circuit preliminarily determined that DHS was not likely to prevail on its argument that "§ 1225(b)(2)(A) covers any noncitizen who is unlawfully already in the United States as well as those who present themselves at its borders." Castanon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1062 (7th Cir. 2025). The issue is also before the Eleventh Circuit. See Alvarez v. Warden, Fed. Det. Ctr. Miami, No. 25-14065 (11th Cir.) (oral argument held Mar. 26, 2026).

the Court rejects the Federal Respondents' arguments that Fonseca is subject to mandatory detention under § 1225(b)(2).

It is undisputed that Fonseca entered the United States without inspection and has been residing here for some time. Thus, she is not properly detained under § 1225(b)(2) as the Federal Respondents contend, and the Petition is due to be granted.

### e. Motion to Dismiss

In the Motion to Dismiss, Respondent Warden asks the Court to "dismiss [him] from this proceeding with prejudice" as an improper respondent. Motion to Dismiss at 12. He argues that ICE is Fonseca's "'immediate custodian'" and "the director of ICE's local field office responsible for [the detention center housing Fonseca] – not its 'warden' – is the proper respondent." Id. at 11-12.

There is much confusion and difference of opinions on who the proper respondent is when an immigration detainee files a § 2241 petition. The Court recognizes Respondent Warden's argument that while a warden may technically maintain day-to-day control of a facility, the warden does not have ultimate control over an immigration detainee's custody status, and a warden is ill-equipped to respond to a habeas petition and defend the federal government's interests. Nevertheless, the warden is the "immediate custodian" and presumably the individual who, upon ICE's direction, opens the door to release the detainee. Given the uncertainty and wide-ranging decisions on this

particular issue, the Court declines to find that the warden is not a proper respondent. See, e.g., Vasquez v. Reno, 233 F.3d 688, 696 (1st Cir. 2000) ("[W]e hold that an alien who seeks a writ of habeas corpus contesting the legality of his detention by the INS normally must name as the respondent his immediate custodian, that is, the individual having day-to-day control over the facility in which he is being detained."); Pak v. Hoover, No. 3:26-CV-00379, 2026 WL 624165, at *1 n.1 (M.D. Pa. Mar. 5, 2026) (maintaining the warden as the only respondent, but recognizing that "the government will be bound by the [c]ourt's judgment because [the warden] is acting as an agent of the federal government by detaining [the petitioner] on behalf of [ICE]"); Cid-Barrios v. Raycraft, No. 25-13630, 2025 WL 3724377, at *4 (E.D. Mich. Dec. 24, 2025) ("[T]he Acting Director of Enforcement and Removal Operations for the USCIS Detroit Field Office, and not the administrator of the contract detention facility in Lake County, is the proper respondent to be named in a habeas corpus petition filed by a non-citizen challenging his detention under section 2241."); Krechmar v. Parra, No. 2:25-CV-01095-SPC-DNF, 2025 WL 3620802, at *2 (M.D. Fla. Dec. 15, 2025) (recognizing that "[t]he warden of Alligator Alcatraz would be ill-equipped to respond to the merits of [the petitioner's] claims and to be the sole defender of the federal government's interests" (emphasis added)); Beltran v. Raycraft, - - - F. Supp. 3d - - - , 2025 WL 3237429, at *11-12 (W.D. Mich. Nov. 20, 2025) (recognizing that while the Sixth Circuit has concluded that a

12

noncitizen must generally name his immediate custodian, that is ICE's district director for the district in which he is confined, there are exceptions, such as naming the Secretary of DHS to ensure at least one respondent maintains authority over the petitioner's custody in the event he is transferred out of the district; dismissing all respondents other than the Secretary of DHS, including the warden of the facility at which the noncitizen was housed). As such, the Motion to Dismiss is due to be denied.

### IV. Remedy

The Court next considers the appropriate relief in this case. The Federal Respondents argue that if the Court determines Fonseca's detention is subject to § 1226, "the only appropriate remedy is to begin the process for a bond hearing—not outright release." Response at 8. At the same time, the Federal Respondents assert that "[o]nly [the Executive Office of Immigration Review] can provide a bond hearing. That said, if ordered, ICE would do what is in its power to facilitate a hearing." Id.

The Court is not persuaded by the Federal Respondents' contention that an order directing a bond hearing would be the appropriate relief. First, the Federal Respondents had ample opportunity to argue that Fonseca is or would be subject to detention under § 1226, but they failed to do so. Without any lawful basis for her detention at this time, the Court can only find that Fonseca is entitled to immediate release. See, e.g., Rivero v. Mina, - - - F. Supp. 3d - - -,

13

2026 WL 199319, at *4 (M.D. Fla. Jan. 26, 2026); Bethancourt Soto v. Soto, 807 F. Supp. 3d 397, 410 (D.N.J. 2025).

Second, the Federal Respondents' representation that they will attempt to "facilitate" a bond hearing is, simply, not good enough. This is particularly true where an immigration judge is likely to refuse to conduct a bond hearing, citing Hurtado, 29 I. & N. Dec. 216—similar to the immigration judge's decision in Fonseca's case. Doc. 10-4 at 3 (denying Fonseca's request for a custody redetermination based on "Lack of Jurisdiction"). In the event that occurs, Fonseca would receive no relief at all, and the writ of habeas corpus issued in this case would be rendered entirely meaningless. Therefore, the Court finds the most appropriate relief is release from detention.[5]

Accordingly, it is

**ORDERED**:

1.      Fonseca's request to substitute her counsel of record (Doc. 14) is **GRANTED**. The **Clerk** shall terminate Jose Eduardo Gallego, Jr., Esquire as counsel of record.

2.      Fonseca's Petition for a Writ of Habeas Corpus (Doc. 1) is **GRANTED**. Respondents shall release Fonseca **within 24 hours of this**

---

[5] Insofar as Fonseca requests attorney's fees, she may make such a request in a separate motion, if appropriate. See Local Rule 7.01, United States District Court, Middle District of Florida. Any such motion must be supported by a memorandum of law.

**Order**, and they shall facilitate her transportation from the detention facility by notifying her counsel when and where she can be collected.

3.   Respondent Warden, Baker County Detention Center's Motion to Dismiss (Doc. 11) is **DENIED**.

4.   The **Clerk** is directed to terminate any motions, enter judgment granting the Petition, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 20th day of April, 2026.

MARCIA MORALES HOWARD
United States District Judge

JAX-3 4/20
c:
Counsel of Record

15